UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 25 CR 437 |
| v. | |
| EDDIE ARGUELLES | Honorable Georgia N. Alexakis |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On May 14, 2025, defendant Eddie Arguelles possessed a Glock 23, .40 caliber pistol equipped with a machinegun conversion device, also known as a "switch," with an extended magazine and a laser site. The defendant brought that deadly weapon to a public park, where other kids were present, and fired a shot into the air. The defendant fled when officers approached him but was wrestled down and the firearm was recovered from the pants leg of his sweatpants. Defendant admitted these actions when he pled guilty via written plea agreement. Though this is the defendant's first felony conviction, the seriousness and circumstances of the crime, as well as the need to promote respect for the law and to protect the public from further crimes by the defendant warrant a sentence of 34 months imprisonment—the middle of the Guidelines range.

**I. Background**

On July 30, 2025, defendant Eddie Arguelles was charged by complaint with one count of possession of a machinegun, in violation of Title 18, United States Code, Section 922(o)(1). Dkt. 1. On September 3, 2025, defendant was indicted on the same charge. Dkt. 7. On April 20, 2026, defendant pled guilty via a written plea agreement.

Dkts. 18-19. Defendant is currently scheduled to be sentenced by the Honorable Georgia N. Alexakis on July 13, 2026, at 10:30 a.m. Dkt. 18.

## II. THE OFFENSE OF CONVICTION

On May 14, 2025, Chicago Police Department ("CPD") officers responded to multiple reports of both shots fired and a person with a gun at Riis Park on the west side of Chicago. PSR ¶ 8. One caller reported that a Hispanic male wearing all black and a ski mask on a moped just fired a gun on the football field. *Id.* When CPD officers responded to Riis Park, they saw an individual who matched the description of the alleged shooter, wearing all black with a ski mask standing next to a moped. *Id.* This individual was later identified as Eddie Arguelles. *Id.*

As CPD officers approached Arguelles in their car, Arguelles got on the moped and fled. PSR ¶ 9. Arguelles drove the moped onto a football field, lost control of the moped, and fell on the ground. *Id.* As CPD officers got out of their car, Arguelles attempted to get back on the moped and flee again. *Id.* CPD officers were able to secure Arguelles. *Id.* Arguelles continued to resist by pulling away, stiffening his arms, and reaching towards his leg. *Id.* During Arguelles's arrest, CPD officers recovered a Glock 23, .40 caliber pistol bearing serial number YDX684, which had been equipped with a machinegun conversion device also known as a "switch," an extended magazine and a laser site. PSR ¶ 10*;* GVO at 2. The firearm was recovered from the pantleg that Arguelles had been reaching towards, as described above. PSR ¶ 10. The firearm was loaded with approximately 22 bullets and had an additional bullet in the chamber. *Id.* Law enforcement also located an expended .40 caliber shell

2

casing on the ground near the location where witnesses reported Arguelles had fired the gun. *Id.*

Arguelles has admitted that he knew that the firearm he possessed was equipped with a machinegun conversion device, also known as a "switch", which was a part designed and intended for use in converting a Glock handgun to automatically shoot more than one shot, without manual reloading, by a single function of the trigger. Dkt. 19 at 3. Arguelles has also admitted that, prior to the CPD officers' arrival at Riis Park, he had fired one shot from the firearm into the air. *Id.*

During an interview of one of the civilian witnesses, the witness identified Arguelles's Instagram account name as "emurdaswitchemdown." GVO at 3. The individual in the profile picture appeared to be Arguelles based on Arguelles's booking photograph from May 14, 2025. *Id.* The profile picture for the emurdaswitchemdown Instagram account appeared to show Arguelles holding a firearm with a switch alongside an unknown female. *Id.*



In July 2025, law enforcement executed a search warrant on the Instagram account "emurdaswitchemdown." *Id.* Per the warrant returns, the Instagram account was registered to Eddie Arguelles. *Id.* The Instagram account contained several photographs and videos of Arguelles with firearms, including a video of an individual, believed to be Arguelles, manipulating a firearm and saying something to the effect of, "This little piece right here is what's blocking the switch. Like they knew a mother fucker was trying to put that bitch in here. *Id.* That mother fucker is supposed [to] slide all the way in." *Id.* Because the video appears to be shot from the perspective of the individual manipulating the firearm, Arguelles's face is not visible in the video. *Id.*

## III. Sentencing Guidelines Calculations

The government agrees with the criminal history and offense level calculations, and the applicable Guidelines range of 30 – 37 months imprisonment, as set forth by the United States Probation Office in the PSR. PSR ¶¶ 18-33, 78.

## IV. Application of the Statutory Sentencing Factors

Criminal sentencing has four purposes: retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). Section 3553(a) requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. In determining a sentence to impose, courts considers the statutory factors listed in § 3553(a)(1)-(7), including: the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense

and respect for the law, to promote just punishment, and to afford adequate deterrence from future criminal conduct. *See* 18 U.S.C. § 3553(a); *see also United States v. Vallar*, 635 F.3d 271, 278 (7th Cir. 2011). Here, the factors support the Government's request for a term of imprisonment at the top of the Guidelines range.

**A. The Nature and Circumstances of the Offense, and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Provide Just Punishment for the Offense, and to Protect the Public from Further Crimes of the Defendant**

Possession of a machinegun is a serious and dangerous crime. Arguelles's actions here were especially egregious. He did not simply possess a machinegun. He took that machinegun to a public park where he fired a shot into the air. Arguelles's actions struck fear into innocent bystanders, put people's lives at risk, and could have led to death or serious bodily injury. Arguelles also reached for the machinegun during his arrest, which could have caused the weapon to discharge.

Moreover, Arguelles's activity on his social media account, "emurdaswitchemdown," shows that he promoted and glorified his possession of the machinegun. On his account, Arguelles posted several guns and discussed the use of machinegun conversion devices on handguns. PSR ¶ 28; GVO at 3. Such activity indicates that Arguelles's behavior during the current offense was not an isolated incident but, instead, an escalation of Arguelles's fascination with guns and "switches." It is important that any sentence imposed here be sufficient to address this escalation and to protect the public from any further criminal activity by the defendant.

A sentence of 34 months, near the middle of the Guidelines range, is necessary to reflect these considerations.

### B. The History and Characteristics of the Defendant

The current case is defendant's first felony conviction but, as explained above, Arguelles's social media account shows the current offense was not Arguelles's first time illegally possessing a machinegun. Arguelles's social media account also shows his enthusiasm for machinegun conversion devices, which present a clear and present danger to public safety. These facts weigh in favor of a stiff sentence.

The government acknowledges that there were some challenges in Arguelles's upbringing, including the incarceration of his parents. The government also acknowledges that the defendant was fairly young—19 years old—when he committed the instant offense. These mitigating factors support a term of imprisonment below the top of the Guidelines range, which is why the government is seeking 34 months imprisonment, near the middle of the range.

### C. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct, and Promote Respect for the Law

This Court's sentence should deter copycat behavior. It is important for individuals who know Arguelles, follow his social media presence, are familiar with this case, or may become familiar with this case after the Court imposes its sentence, be deterred from possessing machineguns and to understand that they will subject themselves to a meaningful term of imprisonment if they do what Arguelles did. A sentence of 34 months' imprisonment is sufficient, but not greater than necessary, to deter such individuals.

**D.** **A Below-Guidelines Sentence Would be Insufficient and Inappropriate in this Case**

Two factors considered under § 3553(a) are the advisory range set by the Sentencing Guidelines, and the Commission's policy statements. *See* § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 522 U.S. 38, 128 S. Ct. 586, 596 (2007). For two reasons, this Court should give serious consideration to the advisory Guidelines range.

First, the Sentencing Guidelines are the sole factor in § 3553(a) that provides any objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily-mandated factor, § 3553(a)(6). *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"); *id.* at 253 ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity"); *id.* at 267 (rejecting other remedial alternatives because they were inconsistent with the "basic objective of promoting uniformity in sentencing"). The Supreme Court created the advisory system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker*, 543 U.S. at 264-65. The

7

only way to prevent widespread unwarranted disparities is to give serious weight to the Guidelines.

Second, the Guidelines deserve meaningful consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 128 S. Ct. at 594. It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and that there is "broad" sentencing discretion post-Booker. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not lightly be disregarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotation and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system. See 28 U.S.C. § 994(o). These ongoing efforts to refine the Guidelines are another reason seriously to consider the advisory range.

Here, a careful consideration of the § 3553(a) factors, as detailed above, justifies a sentence near the middle of the Guidelines range.

## V. Supervised Release Conditions

The government agrees with all the conditions of supervised release proposed by U.S. Probation.

## VI.  Conclusion

For the reasons stated above, the government respectfully requests that the Court sentence Arguelles to 34 months' imprisonment.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:  */s/ Wesley A. Morrissette*
WESLEY A. MORRISSETTE
Assistant United States Attorney
219 S. Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 353-5300

## CERTIFICATE OF SERVICE

I, Wesley A. Morrissette, an attorney, certify that I served a copy of the foregoing Government's Sentencing Memorandum by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:  */s/ Wesley A. Morrissette*
WESLEY A. MORRISSETTE
Assistant United States Attorney
219 S. Dearborn Street, Rm. 500
Chicago, Illinois 60604
(312) 353-5300

10